IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                            CRIMINAL NO. 3:19-CR-76-SA-RP-1

ANTONIO LESHUN JOHNSON                                                           DEFENDANT

ORDER AND MEMORANDUM OPINION

In this case, Antonio Leshun Johnson is charged with one count of unlawfully possessing a firearm as a convicted felon. *See* Indictment [16]; 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(a)(2). Johnson entered a plea of not guilty on May 17, 2019. *See* Waiver [17]. Now before the Court is Johnson's Motion to Suppress [26] all the evidence seized from him by the Hernando Police Department, namely two firearms, two ammunition magazines, a vertical fore grip, rail late, laser, and ammunition casing catcher. Both Johnson and the Government filed briefs on the issues. The Court convened a hearing on August 29, 2019 and heard oral argument and testimony from five witnesses, including Johnson.

*Factual and Procedural Background*

Early on the morning of May 12, 2019, Hernando police dispatch received a 911 call reporting that there was a vehicle stopped in the right lane of West Commerce Street "just sitting there."[1] The dispatcher relayed the information over the police radio and three officers responded. Officer Bell was the first to arrive on the scene. According to Bell, when he arrived on the scene, he observed a black Ford Taurus stopped in the right-hand lane of the road with the engine running.

---

[1] At the hearing, there was much argument and questioning regarding the location of Johnson's car, whether it was actually blocking traffic, and when and if the Officer's moved Johnson's car to the shoulder. The Court finds that the Officers' testimony regarding the location of Johnson's car in the roadway, corroborated by the 911 call, credible. Although Johnson initially claimed that he moved his car to the side of the road, during direct examination he stated that he pulled his car over "as far as he could."

Bell approached the driver's side door and observed Johnson slumped over the steering wheel, apparently unconscious. Bell also observed that Johnson had his foot on the accelerator, the engine was racing, and steam or smoke was coming out from under the hood of the vehicle with antifreeze pooling on the ground. According to Bell, he knocked on the driver's window in an attempt to rouse Johnson to no avail. After several unsuccessful attempts to rouse Johnson, Bell opened the car door, put his hand on Johnson's shoulder and shook him. At this point, Johnson woke up. According to Bell, Johnson then put his hand on the gear shift lever, and to prevent Johnson from shifting the vehicle into drive, Bell reached in, turned the ignition off, and removed the keys placing them on top of the car. Bell testified that at this point, Johnson was not free to leave. Bell asked Johnson why he was stopped in the middle of the road. At first Johnson did not respond, but eventually Johnson responded that he was just trying to get home. According to Bell, Johnson's speech was slurred.

Around this time, two additional officers, Algee and Cunningham, arrived on the scene. Cunningham approached the driver's side door of Johnson's car and took over the scene from Bell. According to Cunningham, as he approached Johnson's car from the rear, he observed that the car had a California license plate, and that the registration was expired. Cunningham engaged Johnson in a conversation and also observed that his slurred speech. Cunningham asked Johnson to get out of his car and to step to the rear of the vehicle. Cunningham continued to question Johnson as to why he was stopped in the roadway, and observed that Johnson was wearing two pairs of pants, or a pair of shorts under his pants, and had an impression or bulge on one side consistent with the shape and size of a firearm. According to the Officers, Johnson also appeared agitated and continued to exhibit slurred speech.

Johnson explained that he was trying to get home after a long night working. Cunningham testified that he offered Johnson a courtesy ride home. Johnson denies ever being offered or accepting a courtesy ride.

After noticing the bulge in Johnson's front pocket, Cunningham initiated a pat-down of Johnson's person, directing him to raise his hands and to turn his back. Cunningham immediately felt a gun in Johnson's pocket, detained Johnson, and retrieved a pistol from Johnson's inner pocket. Johnson complied with the search.

After discovering the weapon and detaining Johnson, the officers asked the dispatcher to search Johnson's credentials in National Crime Information Center (NCIC) database. The dispatcher testified that the results showed that Johnson was a convicted felon. At this time, the officers placed Johnson under arrest. After conducting a search of the automobile, the officers found another gun, gun paraphernalia, and other miscellaneous items.

Now before the Court is Johnson's Motion to Suppress [26] any and all evidence found. Johnson maintains that he was merely a distressed motorist, and that the Officers violated his Fourth Amendment rights because neither reasonable suspicion nor probable cause existed when the officers seized and searched his person and automobile.

*Analysis and Discussion*

The Fourth Amendment of the U.S. Constitution protects against unreasonable searches and seizures. U.S. CONST. AMEND. IV. The United States Supreme Court has held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Here, the officers searched Johnson's person and automobile without a warrant. Thus,

the Government bears the burden of proving that the officers' conduct did not violate the Defendant's constitutional rights.[2]

The Government argues that the initial contact between the officer and defendant was a consensual encounter and does not require Fourth Amendment scrutiny. Alternatively, the government contends that the Officers' conduct was constitutional under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The Supreme Court has held that, "the Fourth Amendment's requirement that searches and seizures be founded upon an objective justification, governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *Davis v. Mississippi*, 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969). Accordingly, the Court must first determine whether a seizure occurred.

i. *Seizure*

The Fifth Circuit recognizes three levels of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) so-called *Terry* stops or brief "seizures" that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. 1982); *United States v. Galberth*, 846 F.2d 983, 988-89 (5th Cir. 1988); *United States v. Hanson*, 801 F.2d 757, 761 (5th Cir. 1986).

At the first level, there is no element of detention or coercion, and the Fourth Amendment is not implicated. *Berry*, 670 F.2d at 595, 603; *see Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) (noting that mere approach by law enforcement agents, identifying

---

[2] "Generally, on a motion to suppress, the defendant has the burden of proving, by preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights." *U.S. v. Guerrero-Barajas*, 240 F. 3d 428, 432 (5th Cir. 2001); *citing United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993) (citations omitted). "There are situations, however, where the burden shifts to the government. When the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by preponderance of the evidence, that the search and seizure was constitutional." *Id*.

themselves as officers, does not constitute a seizure); *see also Michigan v. Chesternut*, 486 U.S. 567, 575-6, 108 S. Ct. 1975, 100 L. Ed. 2d 565 (1988) ("Without more, the police conduct here – a brief acceleration to catch up with [pedestrian] respondent, followed by a short drive alongside him– was not 'so intimidating' that respondent could reasonably have believed that he was not free to disregard the police presence.").

The second level involves brief detentions or investigatory stops and requires "reasonable suspicion" on the part of the detaining officer, based upon "specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant an intrusion." *Terry*, 392 U.S. at 19, 88 S. Ct. 1868; *United States v. Martinez-Fuerte*, 428 U.S. 543, 560, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976) (requiring "some quantum of individualized suspicion").

The third level, arrest, obviously requires the existence of probable cause. *United States v. Zukas*, 843 F.2d 179, 182-83 (5th Cir. 1988).

The circumstances that will constitute a seizure were summarized by the Fifth Circuit Court of Appeals in *Mask*:

> A voluntary encounter between an officer and a citizen may ripen into a seizure, triggering the Fourth Amendment and requiring officers to be able to articulate reasonable suspicion or probable cause, "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of [the] citizen." *Terry v. Ohio*, 392 U.S. at 19, 88 S. Ct. 1868 . . . The test provides that an individual has been seized for Fourth Amendment purposes "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id*.

*United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (alteration in original) (citations omitted).

The Court of Appeals then examined the non-exclusive factors for finding a seizure as articulated in *Mendenhall*: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language

5

or tone of voice indicating that compliance with an officer's request might be compelled. *Mask*, 330 F.3d at 337 (citing *Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

The relevant test in determining whether the initial encounters described above were actually investigative detentions, enunciated in *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991), is whether a reasonable person in the circumstances presented would feel free to disregard the agents and go about his or her business.

Typically, the classification of a police officer responding to a call about a distressed vehicle is likely to fall under the first police-citizen encounter in which the Fourth Amendment is not implicated. The facts of this case present a somewhat unique and different scenario.

In this case, three officers were present on the scene, they were in uniform and although they never drew their weapons, their handguns were displayed on their holsters. Johnson testified that the Officers' tone was commanding and led him to believe that he must comply. Other than Officer Bell's shoulder shake to awake Johnson, there is no evidence of physical contact prior to the pat down. Importantly, at the hearing, Officers Bell and Algee testified that the Defendant was not free to leave. Also, Officer Bell removed the keys from the car limiting Johnson's ability to physically leave the scene. Other Court have found that similar actions by officers indicated that a defendant was not free to leave. In *Florida v. Royer*, after being detained at the airport based on suspicion that she was transporting drugs, officers took the suspects driver's license and flight ticket. 460 U.S. at 501-3, 103 S. Ct. 1319. The Supreme Court found that because they confiscated her identification and flight ticket and did not inform her that she was free to leave, the defendant was reasonable in believing she was not free to leave. *Id* at 503, 103 S. Ct. 1319.

Considering these facts and precedent, the Court concludes that the encounter between Johnson and the officers was a seizure, and even if it was consensual at its inception, it quickly

ripened into a seizure. Fourth Amendment scrutiny does apply, and the Government bears the burden of proving that the officers' conduct did not violate the Defendant's constitutional right to be free from unreasonable searches and seizures. *See Guerrero-Barajas*, 240 F. 3d at 432.

   ii.   *Terry and Reasonable Suspicion*

The Government next argues that the seizure and subsequent search was justified under *Terry*, 392 U.S. 1, 88 S. Ct. 1868. In support of this argument, the Government posits several reasons why the officers had reasonable suspicion to seize and search Johnson. In its response to the Motion to Suppress [26], the Government argues that because Johnson had an expired tag and was obstructing traffic, both violations of Mississippi law, the Officers had reasonable suspicion to believe Johnson was committing a crime. *See* Government's Response [28].

These cited violations are only reasonable suspicion to initiate a stop. In *U.S. v. Lopez-Moreno*, the Court stated "for a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. 420 F.3d 420 (5th Cir. 2005), (citing *United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995)). This case presents an unusual set of facts. Although there was not a traffic stop in the traditional sense, Johnson was stopped in his vehicle in the roadway with the engine running slumped over the steering wheel. Whether this case involves a traffic stop in the traditional sense or not, based on all of the facts and circumstances: the 911 call, Johnson's vehicle in the roadway, Johnson unconscious at the wheel, and the expired tag, the Officers did have sufficient reasonable suspicion to initiate contact with Johnson.

Turning to the pat-down, *Terry* requires the government to establish, through specific and articulable facts, that the officers had reasonable suspicion to believe that Johnson was engaged in criminal activity. *See United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (citing *Terry*,

392 U.S. at 10, 88 S. Ct. 1868). "The Supreme Court requires lower courts to look at 'the totality of the circumstances' in evaluating whether or not the police had reasonable suspicion of criminal activity." *U.S. v. Pack*, 612 F.3d 341, 358 (5th Cir. 2010); (citing *U.S. v. Arvizu*, 537 U.S. 266, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)). The Court has interpreted this requirement as prohibiting the method of 'divide-and-conquer analysis,' under which a court examines and rejects individually each of a number of facts that the police cite as having created reasonable suspicion, instead of examining factors jointly." *Id* at 274. "Thus, it is improper for a court to refuse to find that reasonable suspicion existed because each of a set of circumstances has an innocent explanation . . . the proper question is whether or not the entire set of circumstances taken together, created reasonable suspicion of criminal activity." *Id*.

The Government argues first that the reasonable suspicion was the Officers' observation of Johnson slumped over the steering wheel and stopped in the roadway. The Court notes that this fact is corroborated by the citizen who made the initial 911 call. The Officers confirmed the information provided by the caller when they arrived at the scene. Officers Bell and Algee observed Johnson slumped over the steering wheel of his car.[3] In addition, the Defendant's foot was on the accelerator causing the car to smoke and overheat. Clearly, these circumstances gave rise to reasonable suspicion that Johnson may have been impaired in some way. At the hearing, the Officers readily conceded that there was no smell of alcohol or marijuana, but also acknowledged their suspicion that Johnson could have been under the influence of other drugs which do not have an obvious smell. Officer Cunningham also stated that he became further suspicious after Johnson appeared confused and asked why Cunningham was there. In addition,

---

[3] In evaluating whether or not an officer's suspicion is reasonable, "due weight must be given ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 10, 88 S. Ct. 1868.

Officer Cunningham testified that once Johnson exited his car, he immediately noticed a suspicious impression in Johnson's pocket. Finally, when Cunningham asked to do a brief search, he testified that Johnson became agitated.

In light of the totality of these circumstances, the Court finds that reasonable suspicion existed at the time of the pat-down, regardless of whether the pat-down was conducted pursuant to the offer of a courtesy ride or not. "Reasonable suspicion exists when the detaining officer(s) can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the . . . seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006).

The Supreme Court also stated in *Terry*:

> upon suspicion that a person may be armed, the police should have the power to frisk him for weapons. If the stop and frisk give rise to probable cause to believe that the suspect has committed a crime, then the police should be empowered to make a formal arrest, and a full incident search of the person.

*Terry*, 392 U.S. at 10, 88 S. Ct. 1868. After Officer Cunningham noticed the impression in Johnson's pocket, he conducted a brief investigatory pat-down and felt what seemed to be a handgun in the Defendant's pocket. Officer Cunningham retrieved the gun which was later identified as a loaded pistol. Johnson was detained and arrested after the NCIC search reported that he was a convicted felon. Based on the totality of the circumstances presented in this case, the Court finds that the Officers did not violate Johnson's Fourth Amendment rights when they initiated a pat-down that resulted in the discovery of the pistol.

### iii. *Inventory Search*

After Johnson's arrest, the Officers conducted an inventory search of Johnson's vehicle prior to transporting it back to the police station. The Government argues that the inventory search of Johnson's automobile is justified under the inventory search exception.

"Inventory procedures serve to protect the owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990). "The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" *Id*. Whether this is an inventory search depends on whether the officer conducted the inventory search based on the department's standardized inventory procedures. *See Colorado v. Bertine*, 479 U.S. 367, 372, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987) (holding that "in the absence of showing that police, who followed standardized caretaking procedures, acted in bad faith for the sole purpose of investigation in conducting inventory search of defendant's [car], evidence discovered during search is admissible.").

Officer Cunningham testified once a person has been arrested, the department policy allows the Defendant's automobile to be "inventoried" or searched in case the defendant has anything of value in the car. He further testified that the search is to protect the Defendant's property before the automobile is impounded, and the Government produced some documentation of the Department's search procedures. Officer Cunningham testified that he and the other officers were involved in the inventory search. While conducting the automobile search, they found a rifle that had been converted to a pistol, and other items according to the Inventory Report [31-5]. Officer Cunningham also testified that the search was conducted pursuant to the department's standardized

search procedures [31-4]. The Defendant did not offer any evidence contradicting the government's claim. For these reasons, and because the Court finds above that the search of Johnson's person that resulted in his arrest, the search of Johnson's automobile was justified and did not violate the Defendant's Fourth Amendment rights.

*Conclusion*

For all the reasons stated above, the Defendant's Motion to Suppress [26] is DENIED.

It is SO ORDERED, on this the 23rd day of September, 2019.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE